IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RAED SAIF, | § | |
| Movant, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-116-A |
| | § | (NO. 4:07-CR-031-A) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the above-captioned action where Raed Saif ("Saif") is movant and United States of America ("the government") is respondent.[1] This is a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Having considered the motion, the government's original and supplemental responses, Saif's reply, and the applicable authorities, the court concludes that the motion should be denied as to all but three grounds and a hearing should be held as to those grounds.

I.

Background

On May 18, 2007, Saif pleaded guilty to one count of a four-count indictment for receipt of goods stolen from an interstate shipment, in violation of 18 U.S.C. § 659. The court sentenced Saif to a term of imprisonment of 97 months, followed by a three-year term of supervised release, and ordered Saif to pay a fine

---

[1] Movant refers to his motion as a "petition" and to himself as "petitioner." Consistent with the language of 28 U.S.C. § 2255, the court uses the terms "movant" and "motion" instead of "petitioner" and "petition."

of $12,500. The United States Court of Appeals for the Fifth Circuit dismissed Saif's appeal as frivolous on August 29, 2008. Saif timely filed this motion.

## II.

### Grounds of the Motion

Saif asserts that the legal assistance provided to him by his lawyer, Glynis Adams McGinty ("McGinty"), deprived him of his constitutional right to effective assistance of counsel. Specifically, Saif argues that McGinty was ineffective because she (1) failed to address that the district court lacked jurisdiction over Saif's case, (2) erroneously assured him that pleading guilty would guarantee him a sentence not to exceed 37 months' imprisonment, (3) failed to alert the court that the government breached two aspects of its plea agreement, (4) failed to move for dismissal of the indictment because of the government's prosecutorial misconduct, and (5) failed to make various objections to the presentence report ("PSR").

## III.

### Standard of Review

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted, especially where he has already had the opportunity to present his federal claims to a federal forum. United States v. Frady, 456 U.S. 152, 164 (1982); United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final

only on issues of constitutional or jurisdictional magnitude and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. Shaid, 937 F.2d at 232. This standard is a "significantly higher hurdle" than the standard of review on direct appeal. Id. Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. 1981). Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

IV.

Analysis

To prevail on his ineffective assistance of counsel claim, Saif must show that (1) McGinty's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In the context of a guilty plea, Saif must show that there is a reasonable probability that, but for McGinty's errors, he would not have pleaded guilty and instead would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 58 (1985). To prove that he was

3

prejudiced by a sentencing error, Ryan must show that there is a reasonably probability that, but for counsel's error, he would have received a lower sentence. United States v. Grammas, 376 F.3d 433, 439 (5th Cir. 2004). Both prongs of the Strickland test must be met to demonstrate ineffective assistance. Strickland, 466 U.S. at 687. Judicial scrutiny of this type of claim must be highly deferential, and the movant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Counsel's decision regarding trial tactics and strategy cannot support a claim of ineffective assistance of counsel unless "it is so ill chosen that it permeates the entire trial with obvious unfairness." Cotten v. Cockrell, 343 F.3d 746, 752-53 (5th Cir. 2003) (citations omitted). Further, "[a] court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one." United States v. Stewart, 207 F.3d 750, 751 (2000).

A. Lack of Jurisdiction

Saif first argues that McGinty should have objected on the basis of the court's jurisdiction. Federal district courts have original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231. Saif's argument is that the government did not present evidence that the shipment in question was an interstate shipment, and thus the court lacked jurisdiction over the criminal action. The plea agreement that Saif signed stated that he understood the nature and elements of

4

the crime, he agreed to the facts in the Factual Resume, and he understood that the facts in the Factual Resume would be submitted as evidence. Plea Agreement at 1. Further, at Saif's rearraignment hearing, the court reminded Saif that, if he did not plead guilty, the government would have to prove that the property was stolen while that property was a part on an interstate shipment of freight. See Rearraignment Tr. 15, May 18, 2007. Saif admitted that all of the requisite elements existed in his case. After hearing the government read aloud the stipulated facts, one of which was that the stolen property was part of an interstate shipment of property at the time of the theft, Saif told the court that all of the facts were true and correct. Rearraignment Tr. 26-27. This argument cannot serve as the basis for his ineffective assistance of counsel claim.

B. Claims Warranting a Hearing

The court, having considered all of the materials submitted by both parties and the applicable authorities, and bearing in mind that contested issues of fact in a § 2255 motion are not to be resolved by affidavits alone, see, e.g., United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981), concludes that a hearing should be scheduled, and counsel should be appointed to represent Saif in the advocacy of, the grounds discussed in this section.

1. Representations of the Plea Agreement

Saif contends that McGinty led him to believe that he could receive, at most, a sentence of 37 months' imprisonment if he

entered into a plea agreement with the government. "When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of the that promise taints the voluntariness of his plea." McKenzie v. Wainwright, 632 F.2d 649, 651 (5th Cir. 1980). "Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." United States v. Sanderson, 595 F.2d 1021, 1022 (5th Cir. 1979). The Fifth Circuit has explained, however,

> Nevertheless, a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations [he] made in open court when entering [his] guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.

United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). "If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue." Id.

Specifically, Saif represents that on May 14, 2007, McGinty visited Saif with a copy of an e-mail from Assistant United States Attorney Joe Revesz ("Revesz") titled "Plea Offer- Raed Saif." Saif attached a copy of that e-mail to his motion. During that visit, Saif represents that McGinty told him that the government agreed that, if Saif pleaded guilty, he would receive a sentence of 37 months' imprisonment. Two days later, McGinty brought Saif the formal plea agreement for him to sign. When

6

Saif discovered that the formal plea agreement differed from the information contained in the e-mail, he asked McGinty about the discrepancy. In response, according to Saif, McGinty told him that the formal plea agreement was just a document for the court and Saif would receive no more than a 37 month sentence as indicated in the e-mail. According to Saif, he signed the plea agreement solely because he understood it to mean that he would receive, at most, a 37 month term of imprisonment. Had he known that the court could sentence him to a term of imprisonment more than 37 months, he asserts that he would not have pleaded guilty and instead would have gone to trial. Saif also represents that on August 30, 2007, one day before his sentencing, McGinty visited him. Saif told her that the PSR contained inaccuracies and that she needed to make objections to it. In response, McGinty told him, "We already have a deal with the government for 37 months sentence. Do you want to fight by objecting or you want the 37 months." Mem. at 31.

In addition to his own sworn affidavit and a copy of the e-mail, Saif provides two additional affidavits. First, he provides an affidavit from James Garcia ("Garcia"), his cousin, who states that he visited McGinty twice before Saif's sentencing. During the second visit, Garcia claims that McGinty told him that she had a deal with the government for Saif to serve a 37 month sentence, and if Saif were to cooperate with the government, he would receive a lesser sentence. Saif also provides an affidavit from Mahmoud Mustafa ("Mustafa"), a friend

7

of Saif, who states the he visited McGinty twice before Saif's sentencing hearing. The first time, McGinty told Mustafa that she had a good deal for Saif from the government and he would face only a 37 month sentence if he would plead guilty. Mustafa visited McGinty after Saif received a copy of the PSR and relayed to McGinty that the PSR recommended a sentence of 78 to 97 months imprisonment. Her response, according to Mustafa, was that "the Presentence Report had nothing to do with it. We already have a written offer from the government for 37 months." Mem. Ex. 3. She also told Mustafa that he should tell Saif to listen to her and everything would be fine.

In response, the government provides a sworn affidavit from McGinty, in which she states, in relevant part, the following:

> At no time during my representation of Mr. Saif did I tell him or anyone associated with him what amount of time Mr. Saif would receive. What I did tell [him] and his wife was that the amount of time Mr. Saif received would ultimately be up to the Judge. I further advised them that not I, nor the prosecutor could determine what sentence the Judge would give. I do not ever advice any of my clients in federal court what sentence they will receive and I did not do so with Mr. Saif.
>
> I do not know who Mr. James Garcia or Mr. Mahmon Mustafa are, and I certainly would not discuss a clients [sic] possible sentence with anyone. I did visit with Mr. Saif on several occasions and discussed with him the sentencing guidelines and how they would affect him.
>
> At all times during my representation I informed Mr. Saif of my willingness to proceed to trial in this matter, and of the consequences of a plea.

Resp't App. at 2. While McGinty avoids discussing the e-mail in her affidavit, the record reflects that she presented Saif the e-mail and, in some manner, went over its contents with him. See

8

Telephone Conference Tr. 10, Sep. 19, 2007 (hereinafter, "Sep. 19 Tr.").

### 2. Government's Breach of Plea Agreement for Supporting the Court's Higher Sentence

Saif next argues that, for many of the same reasons set forth in the ground above, McGinty should have objected to the government breaching the plea agreement. "When construing a plea agreement, we look to what the defendant 'reasonably understood' when entering his plea." United States v. Borders, 992 F.2d 563, 567 (5th Cir. 1993). "Promises resulting from the negotiation of plea agreements, whether directly or indirectly made, must be fulfilled to their fullest lawful extent in furtherance of fair and proper administration of justice." United States v. Avery, 621 F.2d 214, 215 (5th Cir. 1980). Where a prosecutor's unfulfillable promise induces a plea of guilty, the promise renders such plea involuntary. See United States v. Amaya, 111 F.3d 386, 389 (5th Cir. 1997). Saif argues that the government breached its plea agreement because, despite the foolish e-mail sent by Revesz, his court-imposed sentence was longer than 37 months' imprisonment.

### 3. Prosecutorial Misconduct

Saif next contends that McGinty should have moved to have the indictment dismissed with prejudice because of "willful and flagrant prosecutorial misconduct." Mem. at 16. Government misconduct mandates dismissal of an indictment where "it is so outrageous that it violates the principle of fundamental fairness

9

under the due process clause of the Fifth Amendment." <u>United States v. Johnson</u>, 68 F.3d 899, 902 (5th Cir. 1995) (internal quotation marks omitted). Saif argues that the e-mail was a "false tactic" used by the government to induce him into pleading guilty and to mislead his attorney into believing that Saif would be sentenced under a guideline range of 37-46 months.

C. <u>Breach of Plea Agreement By Failing to Allow Saif to Provide Substantial Assistance</u>

Saif also argues that the government breached the plea agreement by discontinuing efforts to debrief Saif after he failed a polygraph examination. Again, the court examines whether the government's actions were consistent with Saif's reasonable understanding of the agreement. <u>See</u> <u>Borders</u>, 992 F.2d at 567. The actual plea agreement states that "[i]f [Saif] has provided substantial assistance in the investigation and prosecution of others, the government may file a motion urging sentencing consideration for that assistance." Plea Agreement at 3. The plain language of the plea agreement indicates that the government reserved the discretion to file a motion based on Saif's assistance. In no way did the government agree, as a mandatory condition of the plea agreement, to file a motion based on Saif's assistance. Because the court finds that the government's conduct was consistent with Saif's reasonable understanding of the agreement, this claim cannot serve as the basis for his motion.

D.  Objections to the PSR

Saif finally argues that his counsel was ineffective because she failed to make a variety of objections to the PSR. Specifically, Saif argues that McGinty failed to object to (1) the denial of a three-level reduction for accepting responsibility, (2) the enhancement for the loss amount calculated under United States Sentencing Commission, Guidelines Manuel ("USSG"), § 2B1.1(b)(1)(H), (3) a sophistication enhancement under USSG § 2B1.1(b)(9)(C), (4) a supervisor enhancement under USSG § 3B1.1(c), (5) an obstruction of justice enhancement under USSG § 3C1.1, and (6) the fine.

1.  Acceptance of Responsibility

Saif's argument that McGinty failed to object with regards to a reduction for acceptance of responsibility is not supported by the record. While she made no formal objection, McGinty requested that the court hear from her on the issue of Saif's acceptance of responsibility, and the court entertained her argument. After hearing McGinty's argument, the court denied the request for Saif to the reduction to his sentence. There is no reasonable probability that, had McGinty filed a formal objection rather than make a request to the court during sentencing, Saif would have received a lesser sentence.

2.  Loss Amount

Saif next argues that his counsel should have objected to the PSR's loss estimate on a variety of bases that lack support in the law. The record reflects that the loss amount attributed

11

to Saif in the PSR was actually a mistake and less than the amount predicted by both the government and McGinty. See Sep. 19 Tr. 11-12. The court finds that McGinty's decision to not object to the loss amount was not objectively unreasonable.

3. Sophistication Enhancement

Saif argues that, had McGinty objected to the sophistication enhancement, Saif would have testified and proven that none of the information supporting this enhancement was true. In support of this statement, Saif cites to his attached affidavit, which states "From time to time, I have sent some money to the Middle East. All the money that I have sent, were [sic] legally being transferred." Mem. at 31. The court concludes that, had Saif made the above-referenced testimony, he would not have received a lesser sentence.

4. Supervisor Enhancement

Saif next argues that McGinty was ineffective because she did not object to the supervisor enhancement to Saif's sentence. Saif contends that, had McGinty objected to this enhancement, he would have been able to testify that these allegations were untrue and unrelated. The introduction to USSG § 3B1.1 clearly states that the "determination of a defendant's role in the offense is to be made on the basis of all [relevant conduct] . . . and not solely on the basis of elements and acts cited in the count of conviction." USSG Ch. 3, Pt. B, intro. comment. In support of his assertion that his testimony would prove that the allegations were untrue, Saif cites to paragraph

12

six of his affidavit which states, in its entirety, "I have not recruited and directed the activities of a confidential source (CS). I have not, along with Khalid Abdulhaq, met with the CS at the Rosedale Food Store located at 4836 E Rosedale." Mem. at 31. The court concludes that there is no reasonable probability that, had Saif submitted this testimony, he would have received a lesser sentence.

### 5. Obstruction of Justice

Saif argues that McGinty should have objected to the facts in support of the obstruction of justice enhancement. In support, he states that he is not responsible for "most" of the allegations. Saif's remaining statements in support of his contention that the PSR facts are untrue do not establish that there is any probability, much less a reasonable probability, that an objection to this enhancement would have been anything but meritless.

### 6. Imposed Fine

Finally, Saif urges that his counsel was ineffective because she failed to object to the court's imposition of a fine. As the government correctly points out, however, the imposition of a fine is not a harm related to his custody and falls outside the scope of 28 U.S.C. § 2255. See United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994).

### E. Conclusion

For the reasons given herein, the court concludes that all grounds, except for the grounds described in Section IV.B., are

13

without merit and should be denied. The court is scheduling a hearing on the remaining grounds, and is appointing the Federal Public Defender for the Northern District of Texas to represent Saif in the advocacy of those grounds.

V.

ORDER

For the reasons discussed above,

The court ORDERS that all grounds of the motion of Raed Saif to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, except the grounds described in Section IV.B. above, be, and are hereby, denied.

The court further ORDERS that the Federal Public Defender for the Northern District of Texas be, and is hereby, appointed to represent Saif in the advocacy of the grounds described in Section IV.B., above.

The court further ORDERS that a hearing on the grounds described in Section IV.B., above, be, and is hereby, scheduled at 10:00 a.m. on May 20, 2009, in the Fourth Floor Courtroom of the United States Courthouse, Fort Worth, Texas, and that at such time, date, and place Saif, court-appointed counsel for Saif, counsel for the government, and Revesz, the Assistant United States Attorney who was assigned to Saif's criminal action that forms the basis of this motion, are to be present.

The court further ORDERS that the government cause Saif to be present in Fort Worth, Texas, at least five (5) business days before the above-mentioned hearing date so that his attorney will

14

have ample time to confer with him in preparation for the hearing.

The court further ORDERS that:

(1) Counsel for each party shall cause the witnesses his client plans to have testify at the hearing to be present in the courtroom at 10:00 a.m. on May 20, 2009, so that the oath can be administered to all witnesses at the same time and any instructions that are appropriate can be given to them as a group.

(2) By 2:00 p.m. on May 11, 2009, each party shall file a witness list having three columns, the first containing the names of the witnesses, the second bearing the heading "Sworn," and the third bearing the heading "Testified." Each witness list shall be accompanied by a summary of all facts and any opinions the calling party expects to prove through the testimony of such witness.

(3) At 10:00 a.m. on May 12, 2009, lead counsel for each party shall meet in person, face-to-face, at the offices of counsel for movant for the purpose of identifying with appropriate exhibit labels all exhibits to be offered at the hearing, consecutively numbering all exhibits as "Hearing" exhibits. Each attorney shall have present at the meeting all exhibits his client intends to offer at the hearing. All exhibits that both parties wish to have received at the hearing shall be identified first with the lowest exhibit numbers, the exhibits movant plans to offer at the hearing but respondent does

not shall be numbered next, and the exhibit respondent plans to offer but movant does not shall be assigned the highest exhibit numbers.  There will be no duplication of exhibits.  The circumstances that a party plans to object to admission into evidence of an exhibit is not a reason for not identifying it.  During the course of the meeting contemplated by this paragraph the parties, through their respective attorneys, (a) shall discuss and attempt to resolve any objections a party has to exhibits the other party proposes to offer.

(4)  By 4:00 p.m. on May 15, 2009, the parties shall jointly file a document, signed by lead counsel for each, listing by hearing exhibit numbers and descriptions of exhibits, all exhibits that have been marked for use at the hearing; and, in the same jointly filed document, the parties shall state (a) all objections movant has to any of the listed exhibits, and (b) all objections respondent has to any of the listed exhibits.  No exhibit will be offered at the hearing unless shown on such list of exhibits, and no objection to an exhibit will be made at the hearing unless set forth in such document.

(5)  While lead counsel for the parties are meeting in person, face-to-face, as required by paragraph (3) above, they shall discuss each of the summaries of facts and opinions to be proved through witnesses at the hearing (which are to be field pursuant to the requirements of paragraph (2) of this order) to the end of evaluating which of the stated facts or opinions are not genuinely in dispute and can be the subject of a stipulation.

The court expects counsel to devote sufficient time to this endeavor to ensure that hearing time is not taken in the developing, through witnesses or otherwise, of facts or opinions that are not genuinely in dispute. The circumstance that a party does not consider a fact or opinion to be relevant or material, or considers it to be otherwise inadmissible at the hearing, is not a reason for declining to include it in the stipulated facts and opinions. By 4:00 p.m. on May 18, 2009, the parties shall jointly file a document, signed by lead counsel for each, listing all facts and opinions to which the parties have stipulated.

(6) By 4:00 p.m. on May 18, 2009, each party shall file a list of exhibits the party plans to offer as evidence at the hearing. The list shall include a column giving the exhibit numbers assigned to the exhibits (as contemplated by paragraph (3) of this order), a column describing the exhibits, a column bearing the heading "Offered," and a column bearing the heading "Admitted."

(7) No party is permitted to adopt as, or in, the party's witness list or exhibit list all or any part of the witness list or exhibit list of the other party.

SIGNED April 27, 2009.

JOHN McBRYDE
United States District Judge